UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION

| | |
|---|---|
| IN RE: | |
| KATHLEEN A. PARKER, | Chapter 7<br>Case No. 04-20091-WCH |
| Debtor | |
| KATHLEEN A. PARKER, | |
| Plaintiff, | |
| vs. | |
| BOSTON UNIVERSITY, | Adv. Pro. No. 05-1287 |
| Defendant. | |

MEMORANDUM OF DECISION

I. **Introduction**

Kathleen Parker ("Parker") brought this adversary proceeding against Boston University ("B.U.") alleging that it violated the automatic stay and seeking a determination that her obligation to B.U. was dischargeable and was in fact discharged. The matter now before me is Plaintiff's Motion for Summary Judgment (the "Motion"). In the Motion, Parker argues that there are no genuine issues of material fact concerning whether B.U. violated the automatic stay and discharge injunction[1] and whether her debt to B.U. is dischargeable and was discharged.[2] In its Objection to Plaintiff's Motion for Summary Judgment (the "Objection"), B.U. contends that

---

[1] *See* discussion, *infra*.

[2] Motion, Docket no. 17.

1

it did not violate the discharge injunction and that its refusal to allow Parker to register pre-discharge was not a violation of the automatic stay.[3] B.U. also requests sanctions under Fed. R. Bankr. P. 9011, contending that Parker's complaint was frivolous and intended only to recover attorney's fees.[4] For the reasons stated below I will grant the relief sought by Parker in part and deny B.U.'s request for sanctions.

II. **Findings of Fact**[5]

Parker enrolled at Boston University in the fall of 1999.[6] During her first three years at B.U. she received a substantial financial aid package consisting of loans and grants.[7] In the fall of 2002 Parker was accepted to a study abroad program in the African country of Niger, where she spent the entirety of her senior year.[8] B.U. pre-paid the costs of her year abroad, including airfare to and from Niger for both semesters.[9] For reasons that the parties do not agree upon, Parker did not receive financial aid for her senior year and did not pay her tuition.[10] B.U. sent

---

[3]Objection, Docket no. 30.

[4]*Id.*

[5]While no evidence was introduced, the facts, unless otherwise stated, are uncontroverted in the Motion and the response thereto.

[6]Complaint Seeking Declaratory Judgment Determining Dischargeability of Debt and for Sanctions (the "Complaint"), p. 2, Docket no. 1.

[7]Memorandum in Support of Defendant's Objection to Plaintiff's Motion for Summary Judgment (the "Objection Memo"), p. 3, Docket no. 31.

[8]Complaint, p. 2, Docket no. 1.

[9]Objection Memo, p. 4, Docket no. 31.

[10]Complaint, p. 3, Docket no. 1.

2

three notices to Parker and her parents during the fall of her senior year.[11] She was, nonetheless, allowed to return to Niger in the spring of her senior year, because, according to B.U., her airfare and foreign tuition and costs had been prepaid the preceding fall.[12]

Following her return from Niger, Parker had one course requirement outstanding and, since this course was offered only during the spring semester, she applied for and was allowed a leave of absence for the fall 2003 semester.[13] When Parker attempted to register for her last course in the spring of 2004, B.U. told her that she could not until she paid $38,195 then owing on her 2002-2003 school year tuition.[14] Unable to afford this, Parker applied for another leave of absence, this to last until the spring of 2005, when the course she needed would again be taught.[15] During the interim she sought to resolve B.U.'s claim.[16] Parker's attempts were unsuccessful, however, and on December 14, 2004, she filed a Chapter 7 bankruptcy, listing an unsecured obligation to B.U. in the amount of $50,799.35.

Having filed bankruptcy, Parker once again attempted to register for her final course and was told that she could not.[17] Through an arrangement with the teacher of the class Parker

---

[11] Objection Memo, p. 3, Docket no. 31.

[12] *Id.* at p. 4.

[13] Complaint, p. 3, Docket no. 1.

[14] *Id.* at p. 4.

[15] *Id.*

[16] *Id.* at p. 4-5.

[17] *Id.* at p. 5. The parties dispute whether Parker was told that she could not register until her outstanding tuition had been paid in full. B.U.'s Answer to Complaint Seeking Declaratory Judgment Determining Dischargeability of Debt and for Sanctions (the "Answer"), p. 3, Docket no. 16.

3

needed to take, which may or may not have come with the acquiescence of B.U., Parker was able to attend class and complete tests and assignments during the spring of 2005, in hopes of eventually being allowed to register once she received her anticipated discharge.[18] On March 28, 2005, Parker received her discharge.

On March 30, 2005, Parker filed her Complaint Seeking Declaratory Judgment Determining Dischargeability of Debt and for Sanctions (the "Complaint"). In the Complaint, Parker sought three remedies: first, a discharge of her debt to B.U.; second, an injunction enjoining B.U. from taking any action to enforce the debt; and third, an award of damages, attorney's fees, and punitive damages arising from B.U.'s alleged violation of the automatic stay.[19]

On April 8, 2005, in the midst of uncertainty over whether she could register and graduate, Parker filed Plaintiff's Emergency Motion for Preliminary Injunction (the "Emergency Injunction Motion") seeking an order that B.U. register Parker for her final class and for graduation. On April 11, 2005, she again attempted to register for class, but was told by personnel in the registration office that she could not do so because of an outstanding tuition bill.[20] According to B.U., the erasure of debt discharged in bankruptcy is not recorded in B.U.'s computer system until one week after the discharge notice was received by B.U.[21]

---

[18]Objection Memo, p. 5, Docket no.31.

[19]Complaint, Docket no. 1.

[20]Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment (the "Motion Memo"), p. 4, Docket no. 17.

[21]See Objection Memo, p. 7, Docket no. 31.

4

At a hearing on the Emergency Injunction Motion on April 13, 2005, B.U. agreed to register Parker for her class and for graduation, and the parties agreed to continue the hearing on the Emergency Injunction Motion generally. After some disagreement over the amount of tuition Parker would have to pay for her last class, she was registered for the class and for graduation on or about May 20, 2005.[22] She passed her class and graduated with the class of 2005.[23]

On April 20, 2005, B.U. filed its Answer to the Complaint (the "Answer"). In it, B.U. alleged that Parker's adversary proceeding was brought solely for the purpose of recovering attorney's fees, and requested the dismissal of the adversary proceeding and the levy of sanctions pursuant to Fed. R. Bankr. P. 9011 against Parker's attorney for filing a frivolous case. Thereafter, the parties filed the Motion and the Objection. I held a hearing and took the matter under advisement.

### III. Analysis

#### A. The Standard of Review for a Motion for Summary Judgment

Fed. R. Bankr. P. 7056, which incorporates Fed. R. Civ. P. 56, governs motions for summary judgment. Fed. R. Civ. P. 56(c) states that if "there is no genuine issue as to any material fact . . . that the moving party is entitled to a judgment as a matter of law." The burden of establishing that there is no genuine issue as to any material fact is on the movant. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). Initially, the burden of production rests on the movant, and if satisfied then shifts to the nonmoving party. *Id.* The burden of persuasion always remains on the moving party, *id.*, although ". . . an adverse party may not rest upon the mere

---

[22]Objection Memo, p. 6-7, Docket no. 31.

[23]*Id.*

5

allegations or denials of the adverse party's pleading, but . . . must set forth specific facts showing there is no genuine issue for trial." Fed. R. Civ. P. 56(e). *See* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1985).

**B**. Count One: Dischargeability of Debt

In Count One of the Complaint, Parker contends that because her debt to B.U. is not an educational loan excepted from discharge under 11 U.S.C. § 523(a)(8), she is entitled to a judgment that her discharge under § 727 should include that debt.[24] In the Answer, B.U. agrees that the debt is not subject to the anti-discharge provision of § 523(a)(8).[25] Accordingly, I will enter an order granting Parker summary judgment on this count.

**C**. Count Two: Sanctions for Violations of the Automatic Stay

**1**. Whether Boston University's Action Violated the Automatic Stay

Parker requests actual damages, attorney's fees, and punitive damages pursuant to § 362(h) for B.U.'s purported violation of the automatic stay. Parker contends that B.U.'s refusal to allow her to register for classes post-petition violated the § 362(a)(6) automatic stay as an attempt to collect a debt.[26] B.U. does not contest that it refused to allow Parker to register, arguing that it acted inoffensively in doing so because it was contemplating bringing an action to

---

[24]Absent such a declaration, Parker runs the risk that B.U. will seek to collect on the debt post-petition. *See, e.g.*, Tennesee Student Assistance Corp. v. Hood, 541 U.S. 440, 450 (2004) ("Section 523(a)(8) is 'self-executing '"). The issue of whether this type of debt is a student loan for purposes of the statute has been the topic of a number of cases. *See, e.g.*, Boston University v. Mehta, 310 F.3d 308 (3d Cir. 2002).

[25]Answer, p. 3, Docket no. 16.

[26]Section 362 stays "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(6).

6

challenge the dischargeability of her debt.[27]

Neither party directed me to nor could I find cases in which a court addressed whether a school violates the automatic stay when it refuses to allow a debtor to register for class or to graduate. A number of courts have addressed whether it is a violation of the automatic stay for a school to withhold a debtor's transcript post-petition. The act of withholding a debtor's transcript has the same character as the act of denying a debtor the opportunity to register for class or to graduate, as it deprives a student of a service that would be available to her were she not a debtor, and I view cases resolving the transcript issue as instructive.

Cases in which a court decides whether a school's refusal to release a debtor's transcript violates the automatic stay fall into four basic groups. The first group of cases holds that schools do not violate the automatic stay when they refuse to release the transcript of a student whose debt is an educational loan or benefit made nondischargeable by § 523(a)(8).[28] *See* In re Billingsley, 276 B.R. 48 (Bankr. D. N.J. 2002); Najafi v. Cabrini College (In re Najafi), 154 B.R. 185 (Bankr. E.D. Pa. 1993). Both of these cases rely heavily on Johnson v. Edinboro State College, 728 F.2d 163 (3d Cir. 1984), a case in which the Third Circuit Court of Appeals stated that it could ". . . find no reason in the bankruptcy code to nullify Edinboro State's policy of withholding transcripts from those students who have made no payments on their educational loans, have not approached the college to arrange a more flexible repayment schedule, and have

---

[27]Objection Memo, 2-3, Docket no. 31.

[28]Section 523(a)(8) excepts from discharge any debt "for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship or stipend . . . ." 11 U.S.C. § 523(a)(8).

7

not had their debts discharged." *Id.* at 166. The Najafi court suggests that Johnson cannot logically be confined ". . . to only those situations where the student-debtor either concedes nondischargeability or the decision regarding dischargeability precedes the assertion by the debtor of a violation of the automatic stay on the part of a college that seeks to retain a student-debtor's transcript." Najafi, 154 B.R. at 193.[29]

The second group of cases holds that a school violates the automatic stay if it refuses to release a debtor's transcript unless the subject debt has been judged nondischargeable by a court, in which case the automatic stay terminates with respect to the nondischargeable debt. *See* Andrews Univ. v. Merchant (In re Merchant), 958 F.2d 738 (6th Cir. 1992); California State Univ. v. Gustafson (In re Gustafson), 111 B.R. 282 (B.A.P. 9th Cir. 1990), rev'd on other gounds, 934 F.2d 216 (9th Cir. 1991); Watson v. City National Bank (In re Watson), 78 B.R. 232 (B.A.P. 9th Cir. 1987); Carson v. Logan College of Chiropractic (In re Carson), 150 B.R. 228 (Bankr. E.D. Mo. 1993); Virginia Union Univ. v. Parham (In re Parham) 56 B.R. 531 (Bankr. E.D. Va. 1986).[30]

The reasoning underlying this argument is laid out in Boatmen's Bank of Tennessee v. Embry (In re Embry), 10 F.3d 401, 403 (6th Cir. 1993). In that case the Sixth Circuit stated that ". . . once a bankruptcy court enters its judgment holding a debt nondischargeable, the automatic stay does not preclude execution of the judgment against property of the debtor which is not property of the estate." *Id.* at 404. The court went on to say that "[t]he district court below held

---

[29] The court in Johnson did not specifically address whether withholding a transcript might constitute a § 362(a) violation. Instead, it focused on whether there had been a violation of the antidiscrimination provision of the Code, § 525.

[30] Two other cases, In re Reese 38 B.R. 681 (Bankr. N.D. Ga. 1984), and Johnson, discussed above, can be read as implicitly endorsing this view.

8

that the nondischargeability judgment constituted a denial of discharge under section 362(c)(2)(C) and thus lifted the automatic stay as to the debt," and agreed with the district court's reasoning.[31] *Id.* at 403. The court did not discuss the application of §§ 362(a)(5) and (6).

The cases in the third group conclude that withholding a transcript is a violation of the automatic stay without addressing the effect of a judgment that the underlying debt is nondischargeable. *See* Loyola Univ. v. McClarty, 234 B.R. 386 (E.D. La. 1999); In re Scroggins, 209 B.R. 727 (Bankr. D. Ariz. 1997); In re Ware, 9 B.R. 24 (Bankr. W.D. Mo. 1981); In re Heath, 3 B.R. 351 (Bankr. N.D. Ill. 1980); In re Howren, 10 B.R. 303 (Bankr. D. Kan. 1980). In McClarty, the court spoke directly to the proposition advanced by B.U., that it is appropriate for the school to withhold the student-debtor's transcript while the school debates whether or not to file a complaint seeking to have the debt held nondischargeable. The court stated that one may not skirt the automatic stay simply because the bankruptcy court had not yet determined that the particular debt was nondischargeable. *Id.* at 387.

The fourth group of cases find that schools violate the automatic stay when they refuse to release a student-debtor's transcript, regardless of whether or not the debt has been found non-dischargeable, because the automatic stay remains in effect in the absence of the entry of a § 727 discharge. *See* Cardillo v. Moore-Handley, Inc. (In re Cardillo), 172 B.R. 146 (Bankr. N.D. Ga. 1994); In re Hernandez, 2005 Bankr. LEXIS 789 (Bankr. S.D. Tex. 2005). Of these, Cardillo contains the most persuasive analysis of whether a creditor may proceed in a way that would violate the stay imposed by § 362(a) as to debts declared or presumed non-dischargeable. The

---

[31]Section 362(c)(2)(C) provides that the automatic stay continues until ". . . the time a discharge is granted or denied." 11 U.S.C. § 362(c)(2)(C).

9

court stated that "[a] debtor in a Chapter 7 case receives only one discharge or has one discharge denied: the discharge mentioned in section 727(a)." *Id.* at 151. Analyzing sections 362, 523, 524, and 727, the court decided that

> . . . when section 362(c)(2)(C) speaks of 'the time a discharge is granted or denied,' it can only be speaking of the grant or denial of a discharge pursuant to section 727. Hence, the automatic stay, unless terminated by another enumerated event in section 362 or by court order, remains in effect until a discharge under section 727 is granted or denied.

*Id.*

I agree with Cardillo. There is simply no provision in the bankruptcy code that suggests that debts declared or presumed nondischargeable are no longer subject to the automatic stay. There being no exception to the automatic stay for debts determined to be nondischargeable, it follows that there is no exception to the automatic stay for creditors contemplating whether or not to seek a determination of nondischargeability as to a particular debt. Also, B.U. cannot reasonably argue that the act of not allowing Parker to register for a class and for graduation was done for any purpose other than to compel Parker to pay her debt. Accordingly, I conclude that B.U.'s action violated the automatic stay of § 362(a)(6).

### 2. Whether Damages Can Be Awarded

I now consider whether B.U.'s conduct in this case is compensable under § 362(h). "The standard for a willful violation of the automatic stay under § 362(h) is met if there is knowledge of the stay and if the Defendant intended the actions which constituted the violation." Fleet Mortg. Group, Inc. v. Kaneb, 196 F.3d 265, 269-270 (1st Cir. 1994). B.U. admits that it was aware of Parker's bankruptcy, and that it intended to bar her from registering for class and for graduation, at least until it could decide whether to file a nondischargeability action.[32] I therefore

---

[32]Objection Memo, 2, Docket no. 31.

10

conclude that B.U. was in willful violation of the automatic stay.

### 3. Calculation of Parker's Damages

Having found that B.U.'s actions constituted a willful violation of the automatic stay, I am bound by the language of § 362(h) to award actual damages, costs and attorney's fees to the debtor. Heghmann v. Indorf (In re Heghmann), 316 B.R. 395, 404-405 (B.A.P. 1st Cir. 2004) (quoting Ramirez v. Fuselier (In re Ramirez), 183 B.R. 583, 589 (B.A.P. 9th Cir. 1995)). In an action by a debtor for damages pursuant to § 362(h) for a violation of the automatic stay, "[t]he burden is on the debtor to prove by a preponderance of the evidence that she suffered damages as a result of the stay violation." Heghmann, 316 B.R. at 404-405. "For § 362(h) purposes, actual damages should be awarded only if there is concrete evidence supporting the award of a definite amount." *Id.* at 405.

I will hold an evidentiary hearing in order to determine Parker's actual damages and the amount of her attorney's fees and costs.[33]

### D. Parker's Request for Damages Arising out of Boston University's Alleged Violation of the § 524(a)(2) Discharge Injunction

In her Motion, Parker requests an award of damages arising out of B.U.'s purported violation of the discharge injunction of § 524(a)(2).[34] Summary judgment is available only on a

---

[33]Fed. R. Civ. P. 56(c), made applicable in bankruptcy by Fed. R. Bankr. P. 7056, states, in relevant part, that "[a] summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

[34]11 U.S.C. § 524(a)(2) provides that a discharge
operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived .
. . .

11

party's claims, counterclaims, crossclaims, and requests for declaratory relief. Fed. R. Civ. P. 56(c). A party's claims, counterclaims, crossclaims, and requests for declaratory relief are properly contained in its complaint or answer. *See* Fed. R. Civ. P. 7. Parker did not request damages for violation of the discharge injunction in the Complaint or include the violation of the discharge injunction as one of the counts in the Complaint, because the alleged violation of the discharge injunction took place on April 11, 2005, 12 days after Parker filed the Complaint. Parker did not amend the Complaint to include a count for violation of the discharge injunction. Parker did, however, request summary judgment on the issue of whether B.U. violated the discharge injunction, and B.U. responded to these facts and allegations in its Opposition.

Fed. R. Civ. P. 15(b), made applicable to bankruptcy by Fed. R. Bankr. P. 7015, controls the amendment of pleadings to include new legal claims, and states in relevant part that "[w]hen issues not raised in the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." I will invoke Rule 15(b) to amend the pleadings *sua sponte* to conform to the arguments of the parties and add a count alleging that B.U. violated the discharge injunction. *See* Zaino v. Zaino (In re Zaino), 316 B.R. 1, 8-11 (Bankr. D. R.I. 2004) (ruling that under Fed. R. Civ. P. 15(b), a court may amend the complaint *sua sponte* to conform to arguments made by the parties); First Am. Title Ins. Co. v. Lett (In re Lett), 238 B.R. 167, 187-188 (Bankr. W.D. Mo. 1999).

Although § 524(a), which establishes the discharge injunction, does not include a specific provision setting out available remedies for violations of the discharge injunction, bankruptcy

courts invoke § 105(a),[35] which grants bankruptcy courts broad equitable powers, to enforce the discharge injunction, using the mechanism of a civil contempt action. *See* U.S. v. Rivera Torres (In re Rivera Torres), 309 B.R. 643 (B.A.P. 1st Cir. 2004); Pratt v. GMAC (In re Pratt), 324 B.R. 1, 5 (Bankr. D. Me. 2005). In the bankruptcy context, as in others, civil contempt must be proved by clear and convincing evidence. Ellis v. Dunn (In re Dunn), 324 B.R. 175, 179 (D. Mass. 2005).

B.U. admits that it received notice of Parker's discharge on April 5, 2005,[36] that it refused to register Parker for her class on April 11, 2005,[37] and that it did not remove all holds placed on Parker's activities at B.U. until April 14, 2005.[38] In refusing to allow Parker to register following the discharge of Parker's debt to B.U., B.U. acted in contempt of the discharge injunction. Having found B.U. in civil contempt of the discharge injunction, I will grant summary judgment for Parker on this count, and I will hold an evidentiary hearing to determine the extent of Parker's damages.

---

[35] 11 U.S.C. § 105(a) provides:
The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

[36] Defendant's Concise Statement of Material Facts (the "B.U. Statement of Facts"), ¶ 42, Docket no. 33.

[37] *Id.* at ¶ 23-24, 42.

[38] *Id.* at ¶42.

### E. Boston University's Request for 9011 Sanctions Against Parker's Counsel

B.U.'s request for sanctions is based on its contention that the filing of the instant adversary proceeding accomplished nothing that could not have been, and indeed was, accomplished outside of a courtroom through good faith negotiations.[39] Because of this, B.U. argues, the Complaint is frivolous and Parker's counsel should be sanctioned for presenting it to the court.

In examining the actions of counsel, the First Circuit has stated that "[s]ubjective good faith is not the issue; generally, Rule 9011 demands that counsel's actions comport with an objective standard of lawyerly performance." In re D.C. Sullivan Co., 843 F.2d 596, 599 (1st Cir. 1988). I have "broad discretion in deciding whether counsel acted responsibly under the circumstances." Id.

Parker filed the Complaint on March 30, 2005, and was not registered until about May 20, 2005.[40] Despite what B.U. claims is Ms. Parker's fault in not attempting to register immediately after the April 13, 2005 hearing when I ordered B.U. to register Ms. Parker for her class and for graduation, the fact remains that one of the results sought by Parker was not achieved until almost two months after she filed the complaint, and that Parker's successful registration and graduation was, at least in part, a result of her attorney's action in filing the complaint. B.U.'s claims that these matters could have been resolved without the need for judicial intervention may be true, but it is not for me to decide how best an attorney is to pursue

---

[39]Objection Memo, 5-7, Docket no. 31.

[40]Id. at 6.

14

his client's interests, if the methods he chooses are reasonable.

The request for a dischargeability judgment and the request for an injunction also do not rise to the level of frivolity. A reasonable lawyer, considering B.U.'s post-discharge actions and repeated allusions to the possibility that Parker's debt might have been found nondischargeable if B.U. had decided to pursue an action to determine dischargeability, could have determined that seeking these remedies was in the best interests of her client. Accordingly, I will deny B.U.'s request for sanctions.

IV. Conclusion

For the reasons set forth herein, I will enter an order granting the Motion in part. Parker requested a judgment that her debt to B.U. is dischargeable and was discharged, and I will grant her summary judgment on that count. I will also grant summary judgment for Parker on the issue of B.U.'s violation of the automatic stay and discharge injunction, and I will hold an evidentiary hearing to determine the amount of Parker's damages and attorney's fees and costs stemming from B.U.'s violations. Finally, I will deny B.U.'s request for sanctions.

William C. Hillman
United States Bankruptcy Judge

Dated: 11/17/05

15